IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

AL M. SMITH,                          §
                                      §
                Plaintiff,            §
                                      § Civil Action No. 3:05-CV-1123-D
VS.                                   §
                                      §
HEWLETT-PACKARD COMPANY,              §
                                      §
                Defendant.            §

MEMORANDUM OPINION
AND ORDER

In this action alleging race discrimination based on
plaintiff's discharge as part of a workforce reduction ("WFR"), the
court must decide whether plaintiff has presented evidence that
would permit a reasonable jury to find that his former employer's
reason for including him in the WFR is pretextual. Concluding that
plaintiff has not met this burden, the court grants defendant's
motion for summary judgment and dismisses this case with prejudice.

I

Plaintiff Al M. Smith ("Smith") sues his former employer,
Hewlett-Packard Company ("HP"), under Title VII of the Civil Rights
Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C.
§ 1981, alleging that HP selected him for inclusion in a WFR based
on his African-American race. Smith worked at HP as a Customer
Engineer in the Customer Support Department.[1] Smith provided

---

[1]The court recounts the evidence in a light favorable to Smith
as the summary judgment nonmovant and draws all reasonable
inferences in his favor. *E.g., U.S. Bank Nat'l Ass'n v. Safeguard
Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater,

technical support to HP customers by performing installations, maintenance, and repairs on equipment at customer worksites.

Gwendolyn Conder ("Conder") became Smith's District Manager in November 2003.  In April 2004, as part of a cost reduction plan, HP directed Conder and other District Managers to assess their work groups and recommend employees for inclusion in a WFR.  Managers were asked to rate their employees in a number of job-related competencies and skills.  Of all Conder's Customer Engineers in the Dallas-Fort Worth area whom she supervised, she ranked Smith the lowest.  Conder evaluated her employees using a "1" to "5" scale, with "5" being the highest.  Smith did not receive any ratings of "4" (demonstrating the capacity to a great extent) or of "5" (demonstrating the capacity to a very great extent).  All but one of the Customer Engineers who ranked above Smith received at least one "4" on the assessment.  Of the Customer Engineers whom Conder rated, two in the top four were African-American.  Although Smith had the lowest ranking in Conder's assessment, she selected Clay Baxley ("Baxley"), a Caucasian who worked in Tyler, Texas, to be included in the April 2004 WFR.  Baxley was one of the two lowest ranked employees on Conder's April 2004 assessment, and, in the months before April 2004, he had lost a major customer contract.

HP again undertook cost reduction efforts later in 2004, resulting in the reduction of Customer Engineer positions in

J.) (citing *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000)).

October.  Conder recommended that Smith and a Caucasian employee be included in the WFR from her division.  Her stated reasons for selecting Smith included that he had been the lowest rated Customer Engineer on her team in Dallas-Fort Worth.  Conder also pointed to recent performance problems that she had experienced with Smith, including customer and employee complaints about him and an incident involving HP customer Southwestern Bell Communications ("SBC").  Conder believed that Smith's customer relations, interpersonal, and team-working skills were the lowest in her work group, and that his involvement in the SBC incident exhibited insubordination, a lack of professionalism, and poor judgment. Smith was one of twelve Customer Engineers selected for termination as part of the October 2004 WFR, seven of whom were Caucasian.

Following his discharge, Smith filed this lawsuit, alleging race discrimination under Title VII and § 1981.  HP moves for summary judgment, presenting the dispositive question whether a reasonable jury could find that HP's proffered legitimate, nondiscriminatory reason for terminating his employment——that he was discharged as part of a WFR——is pretextual.

II

A

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's race."  42 U.S.C. § 2000e-2(a)(1).  Section 1981

guarantees "[a]ll persons within the jurisdiction of the United States . . . the same right . . . to make and enforce contracts" regardless of race.  42 U.S.C. § 1981(a).  "Claims of racial discrimination brought under § 1981 are governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII."  *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n.2 (5th Cir. 1996) (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989)).

Because HP will not have the burden of proof at trial on Smith's claims, it can meet its summary judgment obligation by pointing the court to the absence of evidence to support them.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once HP does so, Smith must then go beyond his pleadings and designate specific facts showing there is a genuine issue for trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is mandatory if Smith fails to meet this burden. *Little,* 37 F.3d at 1076.

In the context of a Title VII/§ 1981 race discrimination claim, Smith must present sufficient direct or circumstantial evidence that would permit a reasonable trier of fact to find that his race was a motivating factor in the decision to discharge him.

*See, e.g., Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 652 (5th Cir. 2004) (addressing Title VII claims for race, color, religion, sex, or national origin discrimination).  "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3. (5th Cir. 2003) (Fitzwater, J.) (age discrimination case) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)).  A plaintiff who offers "sufficient direct evidence of intentional discrimination should prevail, just as in any other civil case where a plaintiff meets his burden." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 40 (5th Cir. 1996) (citing *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328 n.6 (5th Cir. 1994)).  Because Smith has not adduced direct proof of race discrimination, he must rely on circumstantial evidence.

If direct evidence is unavailable, Smith can prove discrimination using the "modified *McDonnell Douglas* approach." *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (age discrimination case).  As modified, *McDonnell Douglas* consists of three steps.  First, Smith must establish a prima facie case of discrimination, which "creates a presumption that [HP] unlawfully discriminated against [him]." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  The burden then shifts to HP to articulate a legitimate, nondiscriminatory reason for discharging

him.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07 (1993).
HP's burden is one of production, not proof, and involves no
credibility assessments.  *See, e.g., West*, 330 F.3d at 385.
Finally, if HP meets its production burden, then Smith may proceed
under one of two alternatives: the pretext alternative or the
mixed-motives alternative.  *See Rachid*, 376 F.3d at 312.  Under the
pretext alternative, Smith must "offer sufficient evidence to
create a genuine issue of material fact . . . that [HP's] reason is
not true, but is instead a pretext for discrimination."  *Id.*
(internal quotations omitted).  Under the mixed-motives
alternative, Smith must offer sufficient evidence to create a
genuine issue of material fact "that [HP's] reason, while true, is
only one of the reasons for its conduct, and another motivating
factor is [Smith's] protected characteristic[.]"  *Id.* (internal
quotations omitted).

B

The parties do not dispute that Smith has established a prima
facie case of discrimination and that HP has a articulated
legitimate, nondiscriminatory reason for terminating his
employment.  Consequently, the court will not discuss the first and
second elements of the *McDonnell Douglas* test, but will instead
focus on the third element: pretext.  Smith must produce evidence
that is sufficient for a reasonable trier of fact to find either
that HP's proffered explanation is unworthy of credence or that a

discriminatory reason more likely motivated HP's decision to terminate him. *See Burdine,* 450 U.S. at 256. Even without direct evidence of race-motived discrimination, if Smith can present sufficient evidence to permit a reasonable jury to find that HP's proffered legitimate, nondiscriminatory reason is unworthy of credence, HP's motion for summary judgment must be denied.

                                        III

HP has introduced evidence of one overarching legitimate, nondiscriminatory reason for terminating Smith's employment——that he was discharged as part of the October 2004 WFR. Within that reason, however, it essentially relies on three subsidiary grounds that it says prompted Conder to recommend that Smith be included in the WFR based on her assessment that he was the weakest member of her work group. First, Smith had been the lowest rated Customer Engineer on Conder's team in Dallas-Fort Worth in the assessment that she completed for the April 2004 WFR. Conder did not want to release another Customer Engineer from Tyler, Texas because she had let Baxley go in the April WFR. Second, Conder had received customer and employee complaints about Smith, and she had received no such complaints about her other Customer Engineers since becoming Smith's District Manager in November 2003. She believed that Smith's customer relation, interpersonal, and teamworking skills were the lowest in her work group. Third, Conder believed that Smith's involvement in the SBC incident exhibited

insubordination, a lack of professionalism, and poor judgment.  The court will analyze Smith's claim of pretext in the context of these underlying reasons.

IV

HP has adduced evidence that Conder recommended Smith for inclusion in the October WFR because she had given him the lowest Customer Engineer rating on her team in Dallas-Fort Worth during the assessment she completed for the April 2004 WFR.

A

Smith opposes HP's reliance on Conder's April 2004 ranking on the threshold basis that HP failed to produce the rating document until July 2006, nearly three weeks after the discovery cutoff.  He complains that, although he properly requested such documents, HP responded in December 2005 that there were none.  And when he asked Conder during her February 2006 deposition whether she had been asked to prepare such a ranking, she said "No."  Smith contends that he was not allowed to discover, analyze, seek to impeach, or otherwise consider the ramifications of the document and, as a sanction, the court should exclude the document, all references to it, and any reliance on it, and should strike it from HP's motion and briefing.

HP responds that it was under a continuing obligation to supplement its discovery as it located relevant information, it did not locate the document in its initial search for responsive

documents, and the document was later identified and produced shortly thereafter.  It posits that Smith has cited no cases to support the contention that the court should not consider Conder's assessment, and that during Conder's deposition Smith learned that there had been a WFR in April 2004 but failed to ask whether Conder had performed an assessment or ranking of her employees at that time.

The court denies Smith's request to exclude and strike the document and any references to, or reliance on, it.  Smith cites no Federal Rule of Civil Procedure in support of his request, so the court is unaware of the precise basis on which he seeks the stringent relief of excluding consideration of evidence from the disposition of a motion.  Without such citation, the court cannot conclude that he has made the necessary showing to support this relatively severe sanction.

Moreover, the court concludes that striking the evidence is unwarranted.  HP produced the document before it filed its summary judgment motion, and just shy of two months before Smith filed his response brief.  Smith thus had fair notice that HP was relying on this evidence to support one of the reasons for including him in the October 2004 WFR.  He had ample time to secure and introduce evidence sufficient to raise a genuine fact question concerning whether HP's reliance on the evaluation is pretextual. Additionally, Fed. R. Civ. P. 56(f) offered Smith the procedural

option of seeking a continuance of the deadline for filing his summary judgment response had he truly thought it necessary to analyze, seek to impeach, or otherwise consider the ramifications of Conder's 2004 evaluation. He did not seek such relief. Accordingly, the court will consider Conder's evaluation for the April 2004 WFR.

B

Smith maintains that the April 2004 Conder ranking is not worthy of credence. He contends, first, that Conder attempts to explain her subjective evaluation by giving one concrete example of Smith's poor performance: his handling of a tape library escalation. Smith maintains that this example is not supported by HP's records, which show that HP commended him for the Fusion Labs[2] tape escalation and that he received letters from two Fusion Labs managers praising his work on the project. He posits that the evidence of the praise he received for his work on this project undercuts and raises a fact question about the credibility of Conder's April 2004 ranking.

A reasonable jury could not find on this basis that Conder's evaluation is pretextual. Conder assessed Smith's performance in eleven categories. One category evaluated was "Technology

---

[2]Smith asserts that he only worked with Conder on one tape library escalation——Fusion Labs——from the time Conder began supervising him until April 2004. The court accepts this as true and assumes that the Fusion Labs escalation is the one at issue.

Consulting Skills."  She averred in her affidavit that one reason she assigned him a rating of "2" in this category——meaning that he demonstrated a skill only "to a small extent"——was because during the tape escalation "[h]e needed reminders to continue to raise the awareness of his customer's issues to the proper technical people within HP."  D. App. 223.  Smith has presented no evidence that would enable a reasonable jury to find that Conder did not in fact subjectively hold this opinion of Smith's performance.

But even if a reasonable jury could doubt Conder's rating of "2" in this one area, Conder evaluated Smith poorly based on a total of eleven different categories.  Smith is attempting to avoid summary judgment by cherry picking one example that Conder gave in support of one category of a multi-component metric.  He has not presented evidence that would allow a reasonable jury to find that Conder did not subjectively believe in the accuracy of a sufficient number of these eleven ratings to permit the finding that her evaluation is pretextual.[3]

Nor is it sufficient that Fusion Labs managers praised Smith's work.  This difference of opinion would only call into question Conder's evaluation of only one category of performance.  And the fact that Conder's opinion and her ultimate ranking of Smith's

---

[3]The court does not suggest that a reasonable jury would be required to doubt a majority of the scores given or even a particular portion of the evaluations in the eleven categories. Smith has not shown, however, that a reasonable jury could doubt Conder's evaluation to the extent of finding that it is pretextual.

"Technology    Consulting    Skills"——from    an    *employer's* perspective——differed from the opinions of those who favorably reviewed Smith's performance——from a *customer's* viewpoint——is insufficient to raise a genuine issue of pretext.

And even if Smith's evidence would permit the finding that Conder's assessment of his performance in the one area of "Technology Consulting Skills" was unreasonable or erroneous, that is insufficient to establish pretext.  An employer "is entitled to be unreasonable so long as it does not act with discriminatory animus." *Sandstad*, 309 F.3d at 899.  "'[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason' for termination." *Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) (quoting *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)).  And the mere fact that Conder's evaluation differed from the opinions of others does not raise a genuine issue of fact.  "The existence of competing evidence about the objective correctness of a fact underlying a defendant's proffered explanation does not in itself make reasonable an inference that the defendant was not truly motivated by its proffered justification." *Little*, 924 F.2d at 97 (citing *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507 (5th Cir. 1988)).

Smith argues, second, that Conder's bias is made evident by a comparison of her evaluation to the objective efficiency rating

that HP uses to assess performance.  He contends that according to the efficiency rating——i.e., "an evaluation of the productivity of a customer engineer comparing his ability to complete tasks successfully relative to the available time to complete them, among other criteria," P. Br. 7——he was consistently one of the most productive engineers in the area.  This evidence would not permit a reasonable jury to find that Conder's evaluation is pretextual.

In the April 2004 ranking, Conder assessed job-related skills and competencies in areas that appear to be much broader than mere employee efficiency.  She rated Smith on numerous non-technical skills, such as "Winning Attitude," "Passion for Customers," "Global Mindset in Action," and "Leveraging Diversity."  D. App. 230.  Smith has presented no evidence that any of these basic competency skills was taken into consideration as part of Smith's efficiency rating.  Therefore, Smith's high efficiency rating scores would not permit a reasonable jury to find that Conder's evaluation is pretextual.

Moreover, an employer could conclude that an employee who is highly productive in terms of efficiency is less valuable than one who has other relevant skills and competencies.  Even if this preference is unreasonable, it is not so unreasonable as to permit a finding of pretext.  As noted, even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason.

Smith argues, third, that Conder's positive evaluation of Customer Engineer Mike Stricklin ("Stricklin"), a Caucasian, compared to her negative assessment of him, raises a fact question concerning pretext. Stricklin had been the "designated" Customer Engineer at SBC's downtown Dallas office.[4] Prior to the April 2004 WFR, Conder discovered from a report from SBC, and from complaints from other HP employees, that Stricklin was not always onsite at SBC, as required. Instead, he had been working from home without permission, and he could not document each hour worked. HP gave Stricklin a Misconduct Advisory memorandum, and it was decided that he should be transitioned from the SBC worksite to an "on call" assignment. Smith contends that on April 9, 2004, the day Conder completed the WFR ranking, she discussed with Human Resources the likelihood that HP would terminate Stricklin, and she later received the paperwork to do so. Instead, she disciplined him only with a Misconduct Advisory memorandum and imposed conditions on his continued employment. Although Stricklin engaged in serious misconduct, Conder rated him as one of her top Customer Engineers. Smith argues that Conder's handling of the Stricklin matter evidences her bias and raises an issue of pretext.

This evidence is also insufficient to permit a reasonable jury

---

[4]Some HP Customer Engineers were "designated"——they reported to work each day at a specific customer's site. Other Customer Engineers, including Smith, were "on call" or "reactive"——they responded to different customer service calls and traveled between customer sites.

to find pretext.  Smith essentially argues that Conder's April 2004 assessment of his job performance is unworthy of credence because she rated Stricklin among her top Customer Engineers despite her contemporaneous conclusion that he had engaged in serious misconduct regarding SBC.  But this argument improperly isolates the April 2004 evaluation as if it were the only or even primary basis for Conder's decision to include Smith rather than Stricklin in the WFR.  While Conder relied on the April 2004 evaluation, she did so in tandem with other reasons, including based on facts derived after the evaluation.  By the time of the October 2004 WFR, Conder was able to assess and compare Stricklin's and Smith's relative performance in a larger context.  Therefore, a reasonable jury could not find that her decision to give Stricklin a high rating in April 2004, despite his troubles at SBC, and to give Smith a low rating, shows that her reliance on Smith's April 2004 evaluation is pretextual, provided her broader assessment of their performance is not unworthy of credence.

Conder testified in her affidavit that, when she made her recommendations for the October 2004 WFR, she in fact considered that Stricklin had received a Misconduct Advisory in May 2004.  But she did not deem this sufficient to warrant including him rather than Smith in the WFR because she believed the discipline of Stricklin was based on a misunderstanding about his being able to work from home.  Conder did not find that he had intentionally

- 15 -

misrepresented his hours or that he was dishonest; instead, she believed that Stricklin had made a mistake that had been adequately addressed. Moreover, Stricklin had not exhibited any performance issues since May 2004. Additionally, Conder thought Stricklin's customer relations skills were excellent, that he was highly regarded by his customers, and that his technical skills were among the strongest of the workgroup. Stricklin had received a score of 43 in the April 2004 assessment versus Smith's score of 31. The only complaint she had received about Stricklin came from another HP Customer Engineer and, unlike Smith, Stricklin's professionalism and customer relations, interpersonal, and teamworking skills had never been called into question. It was for all these reasons that she decided not to select Stricklin for the WFR, and the other District Managers concurred.

In order for a reasonable jury to find this explanation to be pretextual, Smith's evidence would have to permit the finding that Conder's evaluation of Stricklin's performance was more than simply unreasonable or incorrect. He has not done so.[5] Accordingly,

---

[5]In its reply brief, HP cites *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 357 (5th Cir. 1999), to contend that "Smith must establish that he was clearly more qualified than the person retained to establish pretext in a WFR context." D. Reply Br. 8. The court has not considered this argument. First, the part of *Celestine* that HP cites addresses a claim for failure to promote and train. Second, this assertion is directly refuted——at least in the context of an age discrimination case——by *EEOC v. Manville Sales Corp.*, 27 F.3d 1089, 1096 n.5 (5th Cir. 1994) (age discrimination case) (holding that it was reversible error for district court to charge jury that plaintiffs were required in

Smith has failed to demonstrate that a reasonable jury could find that Conder's reliance on the April 2004 evaluation as one ground to include him in the WFR is pretextual.

V

Smith next argues that the customer and employee complaints on which Conder relied in selecting Smith for the WFR are pretextual and unworthy of credence because Stricklin also received customer and employee complaints but was not included in the WFR.

A

According to HP's evidence, in May 2004 Smith responded to a call from a very important HP customer, Kimberly-Clark.  A Kimberly-Clark employee recounted in an email that Smith had asked "why we are taking so long to sync a disk," and he stated "he has 'better things to do rather than wait here all day.'"  D. App. 117. The employee complained in the email about Smith's remarks.  *Id.* at 116-17.  Conder stated in her affidavit that, in addition to these customer complaints, she received complaints from other HP employees that Smith had been making derogatory, offensive comments about his "Red Team" coworkers.[6]  A "Red Team" District Manager and

---

reduction of force case to show that they were clearly better qualified than the employees retained).

[6]HP Customer Engineers were referred to informally as "Red Team" and "Blue Team" employees.  "Blue Team" Customer Engineers had worked for HP before its 2002 merger with Compaq Computers Corporation ("Compaq").  "Red Team" employees were Customer Engineers who had worked for Compaq before the merger.

Customer Engineer heard Smith make derogatory comments regarding the aptitudes and capabilities of pre-merger Compaq Computers Corporation ("Compaq") employees, i.e., "Red Team" employees. The District Manager reported to Conder her concerns about these comments and their impact on employee morale.

Sometime in June or July 2004, Conder and Ken Lilly ("Lilly") met with Smith to discuss his performance problems. At this meeting, Conder addressed the SBC incident, Smith's derogatory comments about the "Red Team" employees, and Kimberly-Clark's complaint about his lack of professionalism. This meeting constituted a verbal warning under HP's corrective action process. In early fall 2004, Conder received a report from Team Lead Cory Woods that LSG Sky Chefs (another large HP customer) was dissatisfied with Smith's performance and would prefer that he not return to their worksite.[7]

Smith contends that Conder also received a customer complaint——from SBC——and two employee complaints about Stricklin's misconduct concerning the SBC account. He argues that a reasonable trier of fact could find that the complaints concerning Stricklin's conduct related to SBC were far more significant than those

---

[7]Smith maintains that the evidence regarding the LSG-Sky Chefs complaint should be stricken because HP has relied solely on "hearsay, coupled with rank speculation." P. Br. 9. The court need not decide whether this evidence is admissible because, even if the court excludes the LSG-Sky Chefs complaint, Smith would not be able to establish that he and Stricklin were nearly identical.

concerning his actions at Kimberly-Clark, and that Conder viewed them as more serious.  Smith posits that Conder's pretext/falsity is apparent from discrepancies between her analysis of Stricklin's misconduct as of April 2004 and as of the filing of HP's summary judgment motion, when she minimized its severity.  He also maintains that Conder's disparate treatment of Stricklin's transgressions versus his own provides a reasonable basis to disbelieve Conder, and that she accomplished a termination——greater discipline than HP Human Resources said was warranted——by including Smith in the WFR.  Finally, Smith argues that Conder relied during her deposition on evidence concerning a complaint from ACS, but HP has failed to rely on it in moving for summary judgment.  He suggests that Conder's reliance on unreliable information in making her decision raises a fact question.

B

The court concludes that Smith has not introduced sufficient evidence to permit a reasonable jury to find that Conder's reliance on customer and employee complaints is pretextual.  To establish that he was subjected to disparate treatment, Smith must show that HP gave Stricklin preferential treatment under nearly identical circumstances.  *Bryant*, 413 F.3d at 478 (Title VII termination case) (citing cases).  Nearly identical circumstances means that the misconduct was nearly identical to that engaged in by the other employee.  *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245

- 19 -

F.3d 507, 514 (5th Cir. 2001)).    In determining whether circumstances are "nearly identical," the Fifth Circuit has noted that "the mere fact that two situations can be classified in the same broad category is a far cry from their being nearly identical." *Dodge v. Hertz Corp.*, 124 Fed. Appx. 242, 244 (5th Cir. 2005) (unpublished opinion).

Although a jury could reasonably find that Stricklin engaged in misconduct, it could not find that the circumstances were nearly identical to those on which Conder relied.    The complaints about Stricklin, although from a customer and HP employees, related to his misconduct concerning a single customer.    HP received several complaints about Smith, one of which (assuming the LSG-Sky Chefs complaint is disregarded) was from Kimberly-Clark, a very important customer, and others of which were from employees.    The employees were not merely complaining about Smith's actions at Kimberly-Clark; they were voicing concerns about Smith's constant negative and degrading comments about "Red Team" employees, which were adversely affecting morale.    According to Conder, Smith was "making negative and condescending statements that were impacting morale." D. App. 224.    While a jury could reasonably find that Stricklin's misconduct involving SBC was more serious than was Smith's at Kimberly-Clark, it could not find that Stricklin received preferential treatment under nearly identical circumstances, where Smith had also been the subject of a customer complaint *and* had

engaged in conduct that undermined something so fundamental to the
health of a business as employee morale.

Moreover, Smith cannot establish that the circumstances
involving Stricklin are nearly identical to his because Conder did
not select him for inclusion in the WFR based on the customer and
employee complaints alone.  She also chose him because of his
ratings on the April 2004 assessment and his conduct in connection
with the SBC incident that she considered insubordination.
Stricklin did not receive a low April 2004 ranking score or engage
in conduct that a reasonable jury could find constituted
insubordination.  Therefore, it would be fundamentally flawed to
characterize the customer and employee complaints in isolation as
the correct context for determining whether there were nearly
identical circumstances.

Because a reasonable jury could not find that Stricklin
received preferential treatment in nearly identical circumstances,
it likewise could not find that Conder's reliance on customer and
employee complaints to include Smith in the WFR is pretextual.

VI

The final reason HP proffers in support of its decision to
terminate Smith is the SBC incident, in which Smith discussed the
lack of qualifications of an HP employee with an SBC manager.

A

 HP replaced Stricklin as the dedicated Customer Engineer at

- 21 -

the SBC account with another Customer Engineer, Don Parker ("Parker"). HP maintains that Smith was unhappy that Stricklin, a "Blue Team" employee, had been replaced by Parker, a "Red Team" employee. Smith allegedly voiced his disapproval to coworker Kristi Jacks ("Jacks"), and stated that he knew a "high-up person at SBC" and was going to tell the person that Conder and HP had no idea what they were doing.[8] Conder was made aware of Smith's statement, but before she could intervene, Smith discussed the matter with SBC manager Sharon Mayberry ("Mayberry"). Smith told Mayberry that Parker did not have the proper training for the job. Mayberry then called Lilly, the District Account Support Manager in charge of the SBC account,[9] and told him what Smith had said. Conder viewed Smith's statements to Mayberry as an act of insubordination that contributed to her decision to recommend him for inclusion in the WFR.

B

In addition to challenging HP's evidence,[10] Smith argues that, in telling his friend Mayberry that he did not think that Parker

---

[8]Smith denies having this conversation with Jacks.

[9]Lilly had at one point in time been Smith's District Manager.

[10]Smith objects to the affidavits of Jacks and the hearsay evidence from HP's management employee, Lilly. The court need not address the objections because, regardless of the evidence, it is undisputed that Conder learned of Smith's statements to Mayberry regarding Parker's qualifications.

was qualified for the SBC account, he was merely complying with HP's Standards of Business Conduct, which required that HP employees deal fairly and truthfully with customers and provide the best service he could.   He also maintains that SBC was contractually entitled to a certain level of qualification, training, and experience in Customer Engineers.  Smith asserts that it was in this context that he responded to Mayberry's question about Parker.  He contends that his statement concerning Parker's lack of training was undeniably true.

Smith cites the Fifth Circuit's decision in *Rachid*, 376 F.3d 305, as support for his argument that he believed he was complying with HP's published standards by truthfully answering Mayberry's questions about Parker's qualifications.  He contends there is a fact question regarding whether he violated company policy.  Smith maintains that under *Rachid*, HP's contention that he was insubordinate, coupled with his belief that he was complying with company policy when he answered Mayberry's inquiry, presents a material factual dispute to be decided by a jury.  The court disagrees.

In *Rachid* the employer specifically cited the employee's failure to follow company policy relating to employee time as its sole reason for firing him.  *Id.* at 307-08.  Here, Conder did not rely on a violation of company policy as a reason to discharge Smith.  Rather, she selected Smith for inclusion in a WFR aimed at

cutting HP operating expenses.  Although Conder relied on the SBC incident as one basis for recommending that Smith be included in the WFR, the facts of this case are distinguishable from *Rachid*. Conder viewed Smith's actions in the SBC incident as demonstrating insubordination, and this was one of several reasons for recommending Smith for the WFR.  Smith's belief that in reporting his opinion to Mayberry he was complying with HP policy would not permit a reasonable jury to find that Conder's reliance on this incident to include him in the WFR is pretextual.

VII

A

In opposing HP's motion, Smith also relies on HP's contention that the comments and statements of Smith's friends and coworkers and other non-decisionmakers are irrelevant and do not raise a genuine fact issue.  HP asserts that statements attributed to Smith's friends and coworkers, Tudario T. Turner ("Turner") and Danny LeBlanc ("LeBlanc"), are stray remarks and should be disregarded, and that the alleged opinions of other friends and coworkers are irrelevant.  Smith responds that the court should consider the evidence of other managers as to the criteria for the WFR.

Smith maintains that there is evidence that Keith Read ("Read"), the HP Area Manager over North Texas, and Turner, Read's counterpart in South Texas, both received information concerning

the guidelines for the WFR.  Turner told Smith that he did not fit
in the criteria for the WFR.  Smith posits that Turner's statement
is not a stray remark, and that a reasonable trier of fact could
infer from it that Conder's post-hoc rationalizations are false
because they did not follow established guidelines.

He also argues that this case is not subject to the usual rule
regarding coworker opinions because they are not intended to show
discriminatory animus per se but are offered to test whether
Conder's assertions about his people skills are credible.  Smith
posits that Conder relied on his alleged shortcomings in "soft
skills" to include him in the WFR.  He asserts that, at least
concerning interpersonal skills and teamwork, the phrase "soft
skills" would lack meaning unless Conder consulted team members
with whom he interacted.  Conder acknowledged that she selected
Smith for the WFR at least in part because of negative feedback
from two Caucasian coworkers, and the only way to verify whether he
had poor interpersonal skills was to ask his peers.  Smith
maintains that the evidence shows that, contrary to Conder's
assertions, his peers admired him as a team player, and Conder
appears to have credited the comments of two Caucasian coworkers
rather than assess a wider, more representative sample.  Thus the
comments of coworkers are admissible to test whether Conder's
assertions about Smith's people skills are credible.

Smith also cites his last performance evaluation as evidence

of his teamwork.  His manager stated that Smith was a great team player and that he had received feedback from various sources that said Smith was a good strong team player.  And Smith cites evidence that, after his termination was announced, the team of Account Support Engineers with whom he worked closely met to discuss the WFR.  Of the ten or eleven present, only one, Jacks (who Smith says provided false information about him) supported the decision.  LeBlanc was bewildered by the decision, thought it did not make sense, and did not like it.  Smith argues that this evidence creates a genuine issue of fact concerning Conder's assertion that Smith was reviled and casts doubt on her contrary assertions, permitting the trier of fact to disbelieve the reasons Conder gave for selecting Smith for termination.

B

Smith's reliance on the statements and opinions of Turner and coworkers and on his performance evaluation is also insufficient to raise a fact issue concerning pretext.

The evidence concerning Turner is found in Smith's affidavit and Turner's deposition.  Smith averred that "[s]hortly after I was laid off in October 2004, Turner and I discussed my lay off.  At that time, Turner told me I should not have been laid off.  He said I did not fit the criteria for the workforce reduction."  P. App. 25.  Turner testified that William Dell'Accio of HP Human Resources reviewed the guidelines with him and other managers, and "he

focused on the skills in the broader sense of overall performance, skills that were——that include both your customer skills, technical skills, overall performance." *Id.* at 84.

A reasonable jury could only find that Conder in fact assessed Smith's customer skills, technical skills, and overall performance when deciding whether to include him in the WFR. And Turner acknowledged that he was the Director for South Texas, New Mexico, and Louisiana, not for Smith's territory. Thus the jury could only find that Turner's statements that Smith "should not have been laid off" and that he "did not fit the criteria" represent his opinion based on something other than a personal assessment of his performance. It could not reasonably find based on that opinion that Conder's detailed explanation for selecting Smith for the WFR is pretextual.

And the fact that Smith's manager saw him as a great team player and had received feedback to that effect, and that coworkers disagreed with Conder's decision, at most represents evidence that there were differences of opinion about Smith's job performance. Even if Conder's evaluation of Smith's performance was unreasonable, incorrect, or differed from the opinions of others, this is insufficient of itself to permit a reasonable finding of pretext. For the reasons the court has already explained, Smith has not presented evidence that would permit a reasonable jury to find that the multiple reasons on which Conder relied in including

him in the WFR are pretextual.

VIII

The court concludes by addressing an argument that HP makes only briefly, but that the court finds bears emphasis in understanding why a decision in HP's favor is compelled by this record.

"[T]here [are] instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000).  The plaintiff might create "only a weak issue of fact as to whether the employer's reason was untrue and there [may be] abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.* (citing *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1291-92 (D.C. Cir. 1998)).  It is "possible for a plaintiff's evidence to permit a tenuous inference of pretext and yet be insufficient to support a reasonable inference of discrimination." *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 903 (5th Cir. 2000) (citing *Travis v. Bd. of Regents of Univ. of Tex. Sys.*, 122 F.3d 259 (5th Cir. 1997)).

In *Price v. Federal Express Corp.*, 283 F.3d 715 (5th Cir. 2002), for example, the Fifth Circuit assumed *arguendo* that the plaintiff had presented evidence showing that the employer's

explanation was pretextual.  *Id.* at 723.   In affirming a summary judgment in favor of the employer, it nevertheless concluded that the plaintiff's evidence of pretext did not support an inference that intentional discrimination was the real reason for the employment decision.   *Id.* at 723-24 (citing *Reeves*, 530 U.S. at 148; *Pratt v. City of Houston*, 247 F.3d 601, 606 (5th Cir. 2001)).

> In *Reeves*, the Court recognized that a prima facie showing, combined with evidence of pretext, may not always be enough to defeat judgment as a matter of law, stating that "if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted evidence that no discrimination had occurred," the employer may be entitled to judgment in its favor.

*Id.* at 724 (quoting *Reeves*, 530 U.S. at 148).

Assuming that Smith has somehow raised a genuine issue of fact concerning pretext, it is a weak issue of fact and there was abundant and uncontroverted evidence that no discrimination occurred.   This case contains *no* evidence that Smith's race was ever considered in any respect.   Even the "stray remarks" evidence does not relate to race or permit a racial connotation.   Smith does not contend that there is such proof, and he cites none in his brief.   His case relies on pretext alone.

There is abundant proof, however, that race did *not* play a role in HP's WFR decisions.   During the April 2004 WFR, Conder ranked Smith the lowest of all her Customer Engineers in the Dallas-Fort Worth area.   Yet she selected a Caucasian Customer

- 29 -

Engineer to be laid off.  Of the Customer Engineers  whom she placed in the top four, two were African-American.  When the October 2004 WFR came along, Conder recommended two Customer Engineers to be included: Smith and a Caucasian.  HP terminated twelve Customer Engineers in all, including seven Caucasians.  Two of the twelve were African-American.  The unfortunate consequences of being included in the two WFRs fell on Caucasians and African-Americans indiscriminately.

                         *     *     *

The court concludes that Smith has failed to introduce evidence that would permit a reasonable jury to find that HP's legitimate, nondiscriminatory reason for including him in the WFR is pretextual.  Accordingly, the court grants HP's August 1, 2006 motion for summary judgment and dismisses this action with prejudice by judgment filed today.

**SO ORDERED.**

March 6, 2007.


                                 _____
                                 SIDNEY A. FITZWATER
                                 UNITED STATES DISTRICT JUDGE